**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Criminal Case No. 21-cr-388-WJM

UNITED STATES OF AMERICA,

       Plaintiff,

v.

JEREMIAH BO BRYANT,

       Defendant.

---

**ORDER EXCLUDING EVIDENCE PROFFERED BY THE
GOVERNMENT PURSUANT TO ITS RULE 404(b) NOTICE**

---

The Government charges Defendant Jeremiah Bo Bryant with: (1) one count of manufacture, possession with intent to manufacture, and possession with intent to distribute quantities of a mixture and substance containing a detectable amount of Tetrahydrocannabinol (THC), in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C); (2) one count of manufacture and possession with intent to manufacture a mixture and substance containing a detectable amount of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(D); (3) one count of maintaining a drug-involved premises, in violation of 21 U.S.C. § 856(a)(1); and (4) one count of endangering human life while illegally manufacturing controlled substances, in violation of 21 U.S.C. § 858.  (ECF No. 1.)

This matter is before the Court on the Government's Notice of Rule 404(b) Evidence ("Notice"), filed on August 22, 2022.  (ECF No. 34.)  Defendant responded on September 9, 2022.  (ECF No. 53.)  For the reasons set forth herein, the Court will exclude the proffered Rule 404(b) evidence.

1

## I. BACKGROUND

On May 19, 2016, agents of the Pueblo County Sherriff's Office investigated a residence located at 1240 Walden Circle, Pueblo West, Colorado due to a strong odor of marijuana. (ECF No. 34 at 3.) As Deputy J.D. Bastian was about to leave, he saw a car pull up to the residence and a man quickly go inside. (*Id.*) Deputy Bastian knocked on the door, and the man answered, identifying himself as "Jessie H." (*Id.*) Jessie H. stated that he lived at the residence but denied growing marijuana, saying that the marijuana in the residence belonged to "Bo Bryant." (*Id.*) Jessie H. gave Deputy Bastian permission to enter the residence and view the marijuana plants. (*Id.* at 3–4.) Deputy Bastian observed more than 300 live marijuana plants and two black tote bins containing vacuum-sealed packages of dry marijuana buds that appeared ready for distribution. (*Id.* at 4.)

Defendant then pulled up to the residence in a black Acura MDX bearing Colorado license plate QSX-775. (*Id.*) He told Deputy Bastian that he had a medical marijuana card with an "extended plant count" permitting him to have up to ninety-nine plants. (*Id.*) Deputy Bastian, having seen the many plants in the residence, explained that Defendant was well over his plant limit, that the residence was now considered a crime scene, and that the Pueblo County Sherriff's Office would apply for a search warrant. (*Id.*) Defendant asked if he could dispose of the excessive plants, and then "became disruptive, scream[ed], and yell[ed] instructions to Jessie [H.]" (*Id.*) A warrant was issued for the residence, and the subsequent search resulted in the seizure of marijuana plants, more than nine pounds of dried marijuana, equipment used to grow marijuana, and nearly $7,000 in cash. (*Id.*)

Defendant was criminally charged in Pueblo County and ultimately pleaded guilty to: (1) Marijuana Cultivation – 30 or more plants in violation of C.R.S. § 18-18-606; and (2) Obstructing a Peace Officer in violation of C.R.S. § 18-8-104(1)(a). (*Id.* at 4–5.) Defendant's Marijuana Cultivation count was dismissed after he successfully completed a two-year deferred sentence. (*Id.* at 5.)

The Government contends that the evidence at trial in this case will show that on May 5, 2020, Defendant and an unnamed guest were manufacturing concentrated THC products using a butane extraction method. (*Id.* at 2.) Allegedly, a miscalculation led Defendant's equipment to explode, causing a fire inside the residence located at 994 South Tierra Buena Drive, Pueblo West, Colorado. (*Id.*) Defendant's guest drove away, but Defendant was "badly burned" and ran to a neighbor's house for help calling 911. (*Id.*) Defendant allegedly said during the 911 call, "I have an extraction lab here, a CBD extraction lab" and, "I wouldn't go in there, there's butane extraction, it's probably like twenty pounds . . . it's in the system itself." (*Id.*)

After obtaining a warrant, the residence was searched. This search resulted in the seizure of: (1) containers (including some black tote bins) containing approximately 114 pounds of a mixture and substance containing a detectable amount of marijuana; (2) cannabidiol (CBD) products; (3) empty butane bottles in the residence and one full bottle in a black Acura MDX bearing Colorado license plate QSX-775; (4) butane hash oil ovens; (5) numerous substances containing THC; and (6) "[o]ther drug manufacturing paraphernalia, equipment, and supplies." (*Id.* at 2–3.)

## II. LEGAL STANDARDS

"The admission or exclusion of evidence lies within the sound discretion of the

3

trial court . . . ." *Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1086 (10th Cir. 1994); *see also United States v. Golden*, 671 F.2d 369, 371 (10th Cir. 1982) ("Trial judges have discretion to decide whether an adequate foundation has been laid for the admission of evidence.").

Under Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would without the evidence; and (b) the fact is of consequence in determining the action." Relevant evidence is generally admissible and should only be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Irrelevant evidence is not admissible." Fed. R. Evid. 402.

Federal Rule of Evidence 404(b) provides:

> (1) Prohibited Uses.  Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2) Permitted Uses.  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.
>
> (3) Notice in a Criminal Case.  In a criminal case, the prosecutor must:
>
>> (A) provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it;
>>
>> (B) articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose; and

> (C) do so in writing before trial--or in any form during trial if the court, for good cause, excuses lack of pretrial notice.

A court considers a four-factor test when determining the admissibility of evidence under Rule 404(b). The test requires that:

> (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to FED.R.EVID. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

*United States v. Zamora*, 222 F.3d 756, 762 (10th Cir. 2000) (quotation omitted); *see Huddleston v. United States*, 485 U.S. 681, 691–92 (1988) (discussing four sources that serve as "the protection against . . . unfair prejudice" when admitting evidence under Rule 404(b)).

### III. ANALYSIS

The Government seeks admission of evidence of Defendant's prior marijuana cultivation to "show [his] requisite mental state as to Counts 2 and 3,[1] and that he made no accident or mistake in possessing the marijuana." The Government argues in the Notice that the evidence of Defendant's prior acts is being offered for a proper purpose; tends to prove the necessary mental states for two of the charged offenses; complies with Federal Rule of Evidence 403; and is subject to a limiting instruction, if requested, under Rule 105. (*Id.* at 5–10.)

---

[1] "Count 2" refers to the manufacture and possession with intent to manufacture a mixture and substance containing a detectable amount of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(D); and "Count 3" refers to maintaining a drug-involved premises, in violation of 21 U.S.C. § 856(a)(1).

In his response, Defendant argues that because "the allegations in the other offense were dismissed by that Court under a deferred judgement [*sic*] arrangement . . . the use of that other act can only [be] to show that he is a person of bad character, something which the law does not allow." (ECF No. 53 at 4.) Defendant further argues that even if the prior act evidence is being offered for a proper purpose, it should be excluded under Rule 403. (*Id.* at 5 ("Here, where the government wants to try another case within the bounds of this case, certainly confusion, delay and 'wasting time' are important considerations.").) Defendant contends that it is "obvious" that admitting the prior acts evidence "would not only create confusion and undue delay but would be a 'waste of time.'" (*Id.*)

The Court has considered the parties' arguments and, while it sees this to be a close case, finds the Government's proposed evidence is not proper under Rule 404(b). The Government does articulate a proper purpose for prior-act evidence. *United States v. Sturmoski*, 971 F.2d 452, 459 (10th Cir. 1992), *abrogated on other grounds by* First Step Act of 2018, Pub. L. No. 115–391, § 403, 132 Stat. 5194 ("[T]he use of prior drug involvement to show plan, motive or intent in a drug trafficking offense is appropriate.") The Government's point that the Court must give a limiting instruction if requested by Defendant, which courts generally assume juries follow, is also well-taken. *See Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985) (explaining that, absent "extraordinary situations," courts "adhere to the crucial assumption underlying our constitutional system of trial by jury that jurors carefully follow instructions"); *but see Krulewitch v. United States*, 336 U.S. 440, 453 (1949) ("The naive assumption that prejudicial effects

can be overcome by instructions to the jury, all practicing lawyers know to be unmitigated fiction.") (Jackson, J., concurring) (internal citation omitted).

**A.     Relevance**

"[P]rior narcotics involvement is relevant when that conduct is 'close in time, highly probative, and similar to the activity with which the defendant is charged.'" *United States v. Becker*, 230 F.3d 1224, 1232 (10th Cir. 2000).  Defendant's prior conduct occurred approximately four years prior to the charged conduct in this case, and the U.S. Court of Appeals for the Tenth Circuit has explained that "[f]our to six years transcends our conception of 'close in time.'"  *Id.*  *Becker*'s language is unusually on point for Defendant, whose prior conduct occurred approximately four years before the charged conduct in this case; however, the Tenth Circuit has also explained that its "holding in *Becker* regarding acts occurring four and six years prior to the crimes charged did not establish a bright-line rule for the relevance of other-acts evidence."  *United States v. Watson*, 766 F.3d 1219, 1239 (10th Cir. 2014).

When the prior acts are sufficiently similar to the charged conduct, concerns about remoteness in time may be outweighed.  *Id.* (citing *United States v. Meacham*, 115 F.3d 1488, 1495 (10th Cir. 1997).  The Government relies on *Watson* to overcome the four-year gap between the prior acts and the charged conduct, arguing the two incidents have "many similar distinctive traits—dry marijuana was stored in black tote style bins, Bryant's black Acura car stored indicia of his illegal marijuana business (cash and butane canisters), possession of distribution quantities of marijuana, and use of a residence for illegal marijuana cultivation and manufacture."[2]  (ECF No. 34 at 9.)  While

---

[2] The Government also argues, "Bryant was on supervision for the prior act conviction until July 10, 2019, . . . which functionally decreases the remoteness in time due to the court's supervision

the Government lists these similarities, it provides no analysis of what "sufficiently similar" means.

In *Watson*, the Tenth Circuit noted that the "other-acts evidence demonstrated that Mr. Watson previously engaged in almost the exact same conduct with the exact same person." 766 F.3d at 1239. *Watson* briefly discussed other cases where Rule 404(b) evidence was admitted despite remoteness in time where the other acts were described as "striking[ly] similar[]," "exactly the same," and "suggest[ing] a similar pattern of sexual abuse of female minor relatives made possible by exploitation of familial authority." *Id.* at 1240 (citing *United States v. Rodriguez*, 215 F.3d 110, 121 (1st Cir. 2000); *United States v. Hernandez-Guevara*, 162 F.3d 863, 873 (5th Cir. 1998); *Meacham*, 115 F.3d at 1495). In *United States v. Henthorn*, the Tenth Circuit affirmed the use of prior-acts evidence in a case in which "the prior incidents were extraordinarily similar to the charged offense." 864 F.3d 1241, 1251 (2017) ("Each incident . . . occurred in a remote location which impeded communications, delayed emergency responders, and reduced the likelihood of accidental witnesses. Indeed, Henthorn was always the only witness at the time of injury. And in the aftermath of each incident, Henthorn told inconsistent stories about what happened.")

While the Court agrees that there are similarities between Defendant's prior acts and the charged conduct, it does not find that they are sufficiently similar to overcome their temporal remoteness. As such, they are inadmissible under Rule 404(b).

---

of Bryant." (ECF No. 34 at 9.) The Government offers no authority for this dubious claim, and the Court is not convinced. The Tenth Circuit wrote in *Becker* that "prior narcotics involvement is relevant when that conduct is 'close in time,'" saying nothing of the legal repercussions (like court supervision) of that conduct. *Becker*, 230 F.3d at 1232.

**B.     Rule 403**

Having determined that the prior act evidence is not admissible under Rule 404(b), the Court need not address Defendant's Rule 403 argument.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS that:

1. The Government's proffered Rule 404(b) evidence, as set forth and described in its Notice (ECF No. 34), is EXCLUDED for the reasons explained above; and

2. This case remains set for trial beginning on **December 19, 2022 at 8:30 a.m.** (ECF No. 40.)

Dated this 5th day of October, 2022.

BY THE COURT:

_____
William J. Martinez
United States District Judge